**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**
**CASE NO.**

**KATIE BATTON O'RILEY, CINDY  KIRTLEY, and KEITH THORNBERRY**

Plaintiffs,

**v.**

**CITY OF WALTON; GABRIEL BROWN; GEVANA HEEGER  HICKS; TERRI COURTNEY; REBECCA MCCLURE  and  DOES  1-50  individually  and in official capacities as employees for the City of Walton inclusive**

Defendants.

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

**<u>INTRODUCTION</u>**

1. Katie Batton O'Riley, Cindy Kirtley, and Keith Thornberry are all former employees of the City of Walton who, at different times, served the City with professionalism, dedication, and a strong commitment to public service.

2. Each of them entered their positions with the intention of contributing positively to the Walton community, and each performed their duties competently and without incident.

3. Despite their strong work histories, all four employees were subjected to improper disciplinary actions that violated City policy, standard HR practices, and basic principles of fairness and transparency.

4. Specifically, each employee was told they had received "verbal warnings," yet these alleged warnings were not documented, acknowledged, nor contemporaneously recorded in their

1

personnel files—as required under City policy.

5. Only after their terminations were these supposed "verbal warnings" suddenly found or inserted into their personnel files, revealing a troubling pattern of retroactive documentation used to justify adverse employment action.

6. This pattern directly mirrors the improper conduct experienced by other former Walton employees, demonstrating a systemic practice within the City to fabricate or backfill disciplinary records in order to support predetermined termination decisions.

7. In each case, the City relied on undocumented and after-the-fact disciplinary notations to terminate otherwise qualified and well-performing employees.

8. These actions violated the City's own policies regarding progressive discipline, documentation requirements, personnel recordkeeping, and employee notice rights.

9. As a result, Katie Batton O'Riley, Cindy Kirtley, and Keith Thornberry suffered reputational harm, emotional distress, and loss of employment opportunities due to unlawful and procedurally flawed termination decisions.

10. This lawsuit seeks compensatory damages, including lost wages and emotional harm, as well as all relief available under federal law, Kentucky law, and common-law tort theories, for the City's pattern of discriminatory, retaliatory, and policy-violating employment practices.

## **PARTIES**

11. PLAINTIFF Cindy Kirtley (hereinafter referred to as "CINDY" individually and "PLAINTIFFS" collectively) is an African-American female and, at all times herein mentioned, a citizen of the United States and a resident of Walton, Kentucky. CINDY was employed full-time as the Assistant City Clerk for the City of Walton from September 21, 2021 through July 28, 2023.

12. PLAINTIFF Katie Batton O'Riley (hereinafter referred to as "KATIE" individually and "PLAINTIFFS" collectively) is a Caucasian female and, at all times herein mentioned, a citizen of

2

the United States and a resident of Kentucky. KATIE was hired by the City of Walton as the Assistant City Clerk who replaced CINDY following CINDY's termination. KATIE's direct supervisor was Gevana Hicks, the City Clerk. During her employment, KATIE was subjected to improper disciplinary actions, including undocumented "verbal warnings" that were not recorded at the time they allegedly occurred and were instead added to her personnel file only after her termination, contrary to City policy.

13.  PLAINTIFF Keith Thornberry (hereinafter referred to as "KEITH" individually and "PLAINTIFFS" collectively) is a Caucasian male and, at all times herein mentioned, a citizen of the United States and a resident of Kentucky. KEITH was employed by the City of Walton as a Maintenance Laborer in the Public Works Water Department, where his direct supervisor was John Bunch. KEITH was terminated on February 21, 2025, following alleged "verbal warnings" that, like the other Plaintiffs, were not documented until after his termination, in violation of the City's progressive-discipline and personnel-recordkeeping policies.

14. DEFENDANT City of Walton (hereinafter referred to as "CITY" and "DEFENDANTS" collectively) is, and at all times herein mentioned was, a municipal corporation duly authorized to operate under the laws of the Commonwealth of Kentucky.  PLAINTIFFS allege that the CITY is legally responsible and liable for the incidents and damages described herein through the intentional and/or negligent acts of its employees. The CITY breached its contractual obligations to PLAINTIFFS, violated public policy, wrongfully retaliated against PLAINTIFFS, and is under the doctrines of liability and respondeat superior.

15. DEFENDANT Gevana Heeger Hicks (hereinafter referred to as "HICKS" individually and "DEFENDANTS" collectively) is, and at all times herein mentioned was, an adult citizen of the United States and a resident of Kentucky. HICKS was employed as a full-time City Clerk/Financial Officer with the CITY, and was at all relevant times CINDY and KATIE's direct supervisor.

16. DEFENDANT Gabriel Brown (hereinafter referred to as "BROWN" individually and "DEFENDANTS" collectively) is, and at all times herein mentioned was, an adult citizen of the United States and a resident of Kentucky. BROWN was the Mayor of CITY from 2018 until 2024.

17. DEFENDANT Terri Courtney (hereinafter referred to as "COURTNEY" individually and "DEFENDANTS" collectively) is, and at all times herein mentioned was, an adult citizen of the United States and a resident of Kentucky. COURTNEY is the duly elected Mayor of the CITY of Walton, Kentucky, having assumed office in or around 2024, following the conclusion of Defendant Gabriel Brown's term. At all relevant times, COURTNEY acted as a final policymaker for the CITY with respect to personnel decisions, discipline, and termination, and exercised supervisory authority over City employees, including Katie Batton O'Reilly, and Keith Thornberry.

18. DEFENDANT Rebecca McClure (hereinafter referred to as "McCLURE" individually and "DEFENDANTS" collectively) is, and at all times herein mentioned was, an adult citizen of the United States and a resident of Kentucky. McCLURE was employed by the CITY in a supervisory and administrative capacity following the departure of former City Clerk Gevana Heeger Hicks. At all relevant times, McCLURE exercised direct  authority over City employees, including Katie Batton O'Reilly, and Keith Thornberry, and was responsible for administering discipline, maintaining personnel records, and participating in or effectuating adverse employment actions at issue in this action.

## JURISDICTION AND VENUE

19. This action includes federal claims brought under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, including (1) procedural due process violations arising from the fabrication and retroactive insertion of disciplinary records, and (2) municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), based on the CITY's widespread custom and practice of falsifying personnel files and disregarding mandatory disciplinary

4

procedures. This Court has federal-question jurisdiction over PLAINTIFFS' § 1983 claims pursuant to 28 U.S.C. § 1331.

20. This Court also has supplemental jurisdiction over PLAINTIFFS' related state-law causes of action—including negligence, negligent supervision and retention, and wrongful termination in violation of public policy—pursuant to 28 U.S.C. § 1367(a). These claims arise from the same common nucleus of operative facts as the federal constitutional claims, specifically the CITY's pattern of fabricating employee records, failing to follow its own mandatory personnel policies, and unlawfully terminating PLAINTIFFS. Exercising supplemental jurisdiction promotes judicial economy, efficiency, and fairness.

21. This Court has personal jurisdiction over DEFENDANT City of Walton ("CITY"), a municipal corporation organized under the laws of the Commonwealth of Kentucky, with its principal offices located in Walton, Kentucky. The CITY employs or employed all relevant personnel involved in the acts giving rise to this action.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to PLAINTIFFS' claims occurred in Walton, Kentucky, within the Eastern District of Kentucky.

## FACTUAL ALLEGATIONS

### CINDY KIRTLEY

23. Plaintiff CINDY was employed by the City of Walton, Kentucky as Assistant City Clerk, beginning in or around late September or early October 2021.

24. At the time CINDY was hired, HICKS served as City Clerk and was CINDY's direct supervisor.

25. The City of Walton maintained written personnel policies governing employee discipline, including Chapter 9 of the Personnel Policies and Procedures Manual.

**Applicable Disciplinary Policies**

Chapter 9, Section 2A of the City's policies governs oral warnings and provides, in relevant part, that the immediate supervisor shall record the details of oral warnings, place them in the personnel file, and provide a copy to the personnel administrator.

26. Chapter 9, Section 5 further requires that, *"in all cases, the personnel administrator will notify the worker of the action taken, and a copy of such notice is to be retained in the worker's personnel file."*

27. Under the City's policies, discipline requires notice to the employee that discipline is being imposed; informal coaching or instruction is distinct from disciplinary action.

### Undisclosed Discipline – Miss Meadows Utility Account Incident

28. Prior to November 7, 2022, HICKS documented an incident involving a utility account associated with a customer identified as Miss Meadows.

29. HICKS testified that the City's IT department informed her that CINDY had deleted a file related to the utility account.

30. HICKS spoke with CINDY about the issue but did not testify that she informed CINDY that the conversation constituted a formal oral warning.

31. HICKS classified the incident as a verbal warning and placed documentation of that warning into CINDY's personnel file.

32. HICKS testified that she does not recall telling CINDY that this alleged verbal warning was being placed in her personnel file.

33. HICKS further testified that she documented the incident and placed it in CINDY's file at the direction of BROWN and City Attorney Michael Duncan.

**Undisclosed Discipline – Alleged Negative Comments About Employees**

34. During the same general timeframe, prior to November 7, 2022, HICKS received complaints from other employees alleging that CINDY had made "negative" comments about coworkers.

35. HICKS testified that she did not personally hear CINDY make any such negative comments.

36. HICKS nevertheless spoke with CINDY about the complaints and classified the matter as a verbal warning.

37. HICKS placed documentation of this alleged verbal warning into CINDY's personnel file.

38. HICKS testified that she does not recall telling CINDY that this matter was being treated as formal discipline or that it was being placed in her personnel file.

39. HICKS further testified that she documented and placed this alleged warning in CINDY's file at the direction of BROWN and City Attorney Michael Duncan, despite lacking first-hand knowledge of the alleged conduct.

**November 7, 2022 Written "Oral Warning"**

40. On November 7, 2022, HICKS issued a written document titled "Oral Warning" containing five bullet-point directives regarding workplace conduct.

41. Several items in the November 7, 2022 document referenced conduct that HICKS acknowledged had previously been discussed informally but had never been documented or designated as discipline.

42. Other items referenced the earlier alleged verbal warnings that HICKS had already placed into CINDY's personnel file without providing notice to CINDY at the time.

43. HICKS could not recall when the underlying incidents occurred and acknowledged that some had

7

taken place months before the November 7, 2022 document.

44. HICKS testified that she does not recall whether she ever informed CINDY that the earlier alleged verbal warnings were being placed into her personnel file.

### June 2, 2023 Performance Evaluation

45. On June 2, 2023, HICKS completed a performance evaluation of CINDY covering the period from July 1, 2022 through May 23, 2023.

46. The evaluation rated CINDY as needing improvement in multiple categories, including categories related to issues that HICKS admitted she had previously addressed only through informal conversations and had intentionally not documented as discipline.

47. The evaluation relied, in part, on matters that had never been formally noticed to CINDY as disciplinary actions in accordance with City policy.

### Admissions by City's Person Most Knowledgeable

48. John F. Wainwright IV, designated by the City of Walton as the Person Most Knowledgeable regarding disciplinary actions and personnel policies, testified regarding the interpretation of Chapter 9.

49. Mr. Wainwright testified that, in his opinion, if a supervisor does not tell an employee that they are receiving an oral warning, the matter should not be placed in the employee's personnel file.

50. Mr. Wainwright distinguished between discipline and ordinary instruction or coaching, testifying that Chapter 9 applies only when the employee is notified that discipline is being imposed.

51. When asked directly whether City policy allows a supervisor to issue a verbal warning without telling the employee it is a warning and then place documentation in the personnel file, the City's counsel

objected and instructed the witness not to answer.

**Policy Violations**

52. Despite the clear requirements of Chapter 9, Sections 2A and 5, HICKS placed multiple alleged verbal warnings into CINDY's personnel file without notifying CINDY that discipline was being imposed.

53. The City, through its supervisors and policymakers including BROWN, allowed undisclosed disciplinary records to be created, maintained, and later relied upon in CINDY's employment record.

54. This practice violated the City's own written policies and deprived CINDY of notice, transparency, and the opportunity to respond to or correct alleged disciplinary actions.

KATIE BATTON O'REILLY

55. Plaintiff KATIE was employed by Defendant CITY from approximately October 2021 until January 2, 2025, a period of more than three years.

56. On or about September 28, 2021, KATIE applied for a position advertised as "Water and Wastewater Utility Clerk." At the time of hire, the starting hourly wage was approximately $16 per hour.

57. KATIE began employment in October 2021. Upon her start date, her job title was changed to "Administrative Clerk."

58. From the outset of her employment, KATIE received no formal orientation or onboarding, despite her position involving municipal administration and public records responsibilities.

59. KATIE reported directly to City Clerk HICKS and worked alongside Assistant City Clerk CINDY.

60. On December 17, 2021, KATIE signed an acknowledgement of receipt of the CITY's personnel

9

policies.

61. From July 1, 2022 through May 23, 2023, KATIE was evaluated by HICKS.

62. This was the only performance evaluation KATIE received during her entire tenure with the CITY.

63. The evaluation rated KATIE's overall performance as "Meets Expectations."

64. KATIE exceeded expectations in Quality of Work and Reliability/Dependability, and met expectations in Attendance/Punctuality, Judgment/Decision Making, Initiative/Flexibility, and Cooperation/Teamwork.

65. The evaluation identified only one area for improvement—communication skills—and did not recommend discipline, probation, or corrective action.

66. KATIE signed this evaluation on June 8, 2023.

67. In July 2023, Assistant City Clerk CINDY was terminated.

68. In September 2023, KATIE was offered the position of Assistant City Clerk by HICKS without having to apply.

69. No explanation was provided to KATIE as to why she was selected for the promotion.

70. KATIE assumed the duties previously performed by CINDY, despite acknowledging that she had less experience and fewer formal qualifications than her predecessor.

71. In or around September 2024, following the election of COURTNEY, all non–City Clerk positions were administratively retitled as "Deputy Clerk." KATIE's title was changed accordingly.

72. From October 2021 through approximately September 2024, KATIE was supervised by HICKS.

73. After HICKS' departure in or around September 2024, KATIE's oversight shifted to COURTNEY and

McCLURE.

74. During the prior administration, including under BROWN, KATIE had no documented disciplinary issues and was never subject to progressive discipline.

**November 2024 Disciplinary Meeting and Protected Activity**

75. In November 2024, KATIE was abruptly called into a meeting with McCLURE.

76. During this meeting, KATIE was presented with what was described as a "second warning" or formal write-up.

77. KATIE immediately objected, stating that she had never received a first verbal warning or any prior discipline.

78. The write-up referenced prior incidents and warnings allegedly contained in KATIE's personnel file, none of which had ever been disclosed to her.

79. The stated issue involved time off taken around Thanksgiving, despite the fact that under prior management employees were permitted to take approved leave without penalty.

80. KATIE refused to sign the write-up, explaining that she would not do so until she could review the prior documents being cited against her.

81. Although the write-up was read aloud, KATIE was not provided a copy of the document at that time.

82. During this meeting, KATIE requested to review her personnel file because discipline was being based on documents she had never seen.

83. This request constituted protected activity, including opposing unjust discipline and seeking access to employment records.

**Denial of Personnel File Access and Fabricated Discipline**

84. Despite requesting her personnel file in November 2024 while still employed, KATIE never received it.

85. Following her termination on January 2, 2025, KATIE made two additional requests for her personnel file.

86. These requests were denied or ignored until KATIE submitted a formal open records request.

87. Only through the open records process did KATIE receive a packet purporting to contain her personnel file.

88. Upon review, KATIE discovered multiple disciplinary documents she had never previously seen, including handwritten and typewritten statements referencing alleged verbal warnings.

89. KATIE had no knowledge of these warnings during her employment, and they were never communicated to her prior to the November 2024 meeting.

90. The November 2024 write-up relied on these undisclosed warnings to justify escalating discipline.

91. The presence of these documents demonstrates that disciplinary materials were added retroactively, after KATIE engaged in protected activity.

92. On January 2, 2025, KATIE was terminated by COURTNEY.

93. Other than the November 2024 meeting, this was the only time KATIE was ever called in to discuss alleged performance or conduct issues.

94. KATIE was terminated without progressive discipline, without access to her personnel file, and without a meaningful opportunity to respond.

95. The CITY's actions reflect a post-hoc effort to manufacture a disciplinary record to justify termination after protected activity, rather than any legitimate performance-based reason.

96. At all relevant times, KATIE was a satisfactory employee who had been promoted, positively evaluated, and entrusted with increasing responsibility.

**KEITH THORNBERRY**

97. Plaintiff KEITH was employed by Defendant CITY for approximately one and a half years prior to his termination.

98. Throughout his employment, KEITH maintained a clean employment record, with no prior write-ups, disciplinary actions, or performance warnings.

99. KEITH consistently performed his job duties satisfactorily and was never informed that his performance was deficient or that his employment was in jeopardy.

100. During his employment, KEITH was subjected to increasing micromanagement despite the absence of any documented misconduct or policy violations.

101. Questions arose regarding lunch breaks and the use of two fifteen-minute breaks. After review, the CITY's attorney confirmed there was no policy violation, and no discipline resulted.

102. During KEITH's employment, an anonymous Facebook post appeared addressing local political matters, including commentary on who to vote for.

103. The post was anonymous and was never proven to have been authored by KEITH.

104. Despite the lack of evidence, CITY officials suspected KEITH of authoring the post because it allegedly criticized the Mayor's political views.

105. KEITH was never presented with proof, nor was any investigation conducted to substantiate the allegation.

106. After this incident, KEITH continued working without discipline, though scrutiny from CITY officials increased.

February 2025 Snowstorm Incident

107. In February 2025, during a snowstorm, KEITH's City-issued work truck became stuck.

108. KEITH temporarily parked the vehicle on a public street near a neighbor's driveway.

109. The driveway was allegedly blocked for approximately ten minutes.

110. The neighbor contacted the City Building and alleged that KEITH honked the vehicle's horn.

111. The City-issued vehicle assigned to KEITH did not have a functioning horn, rendering the allegation false.

112. At the Mayor's request, KEITH's supervisor conducted a one-on-one meeting and instructed KEITH to park the City vehicle in his personal driveway.

113. This directive was not based on any written CITY policy, and KEITH was not aware of any other employees being subject to a similar requirement.

114. Approximately one month later, the supervisor followed up regarding compliance.

115. KEITH explained that space limitations made this impractical at times.

116. On February 21, shortly after returning from lunch, KEITH was informed that another complaint had been made by someone in his subdivision.

117. The complaint alleged KEITH drove recklessly because a vehicle in front of him stopped suddenly without using a turn signal.

118. KEITH was terminated that same day.

119. During the termination meeting, CITY officials focused primarily on the issue of the City truck being parked at KEITH's residence.

120. KEITH was never provided a written charge, disciplinary notice, or explanation of specific policy violations.

121. KEITH was never given an opportunity to respond, was never afforded a pre-disciplinary hearing, and no progressive discipline was followed.

122. KEITH never met directly with the Mayor prior to his termination.

**Disparate Treatment and Retaliation**

123. Other CITY employees committed more serious workplace incidents, including multiple vehicle accidents, yet were not terminated.

124. In the six months preceding KEITH's termination, multiple employees resigned, were assaulted, terminated, or forced out.

125. Based on the timing, lack of discipline, absence of due process, and focus on the anonymous political post, KEITH reasonably believes he was targeted and retaliated against.

126. KEITH's termination was not based on misconduct, but on unsubstantiated allegations, political animus, and retaliatory motives.

127. As a result, KEITH suffered loss of employment, loss of income and benefits, damage to his

professional reputation, and emotional distress.

## CAUSES OF ACTION

## COUNT I

## 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS

## (Fourteenth Amendment)

### Against Defendant City of Walton, Kentucky

### (Monell Liability)

128. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

129. At all relevant times, Plaintiffs were public employees of the CITY with a protected property and liberty interest in their continued employment, personnel records, and professional reputations.

130. Defendant CITY, acting through its officials, deprived Plaintiffs of these protected interests without constitutionally adequate notice or a meaningful opportunity to be heard.

131. Defendant subjected Plaintiffs to discipline, adverse employment actions, and termination based on alleged warnings and disciplinary incidents that were never disclosed, never issued, and never acknowledged by Plaintiffs.

132. Plaintiffs were not informed that they were being disciplined at the time the alleged warnings were purportedly issued, nor were they provided copies of such warnings or an opportunity to contest them.

133. Defendant relied on undisclosed and retroactively created personnel file entries as justification for escalating discipline and adverse employment actions.

134. Defendant further denied Plaintiffs timely access to their own personnel files, preventing them from meaningfully responding to the allegations relied upon.

135. These actions deprived Plaintiffs of procedural due process in violation of the Fourteenth Amendment.

136. The constitutional violations were caused by the CITY's policies, customs, and practices, including but not limited to those described in Count III below.

## COUNT II

### 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS

### (Fabrication of Government Records)

### All Defendants Against Defendant City of Walton, Kentucky

### (Monell Liability)

137. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

138. Defendant, through its officials, engaged in affirmative misconduct by fabricating, altering, or retroactively inserting disciplinary records into Plaintiffs' official personnel files.

139. These fabricated or post-hoc disciplinary records were then relied upon to justify adverse employment actions, including termination and reputational harm.

140. Plaintiffs were never informed of the existence of these alleged warnings at the time they were purportedly issued and had no opportunity to contest their accuracy.

141. The fabrication and manipulation of official government records for the purpose of justifying adverse

action against public employees shocks the conscience and violates substantive due process.

142. Defendant's conduct was arbitrary, capricious, and devoid of any legitimate governmental purpose.

143. The violations were the direct and proximate result of the CITY's customs, practices, and failure to train and supervise its officials.

## COUNT III

## MONELL LIABILITY – UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY

## (42 U.S.C. § 1983)

## All Defendants Against Defendant City of Walton, Kentucky

144. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

145. At all relevant times, the CITYmaintained unconstitutional customs, practices, and policies, including but not limited to:

 a. Issuing discipline without notice to employees;

 b. Placing undocumented or fabricated warnings into personnel files after the fact;

 c. Denying employees access to their personnel files;

 d. Failing to train supervisors on lawful disciplinary and due-process requirements;

 e. Ratifying unconstitutional conduct by final policymakers, including the Mayor.

These customs and practices were widespread, longstanding, and affected multiple employees, including all Plaintiffs.

146. The CITY's final policymakers knew of, condoned, or deliberately ignored these unconstitutional

practices.

147. Defendant's customs and practices were the moving force behind the constitutional violations suffered by Plaintiffs.

## COUNT IV

### 42 U.S.C. § 1983 – FIRST AMENDMENT RETALIATION

### Plaintiffs: Katie Batton O'Reilly and Keith Thornberry Only

### Against Defendant City of Walton, Kentucky

### (Monell Liability)

148. Plaintiffs KATIE and KEITH reallege and incorporate by reference all preceding paragraphs.

149. Plaintiffs KATIE and KEITH engaged in constitutionally protected activity, including but not limited to:

    a. Objecting to undisclosed or false disciplinary actions;

    b. Requesting access to their personnel files;

    c. Challenging the legitimacy of alleged warnings;

    d. Refusing to accept fabricated or inaccurate documentation.

150. Defendant took adverse employment actions against Plaintiffs KATIE and KEITH, including escalated discipline, negative personnel file entries, and termination.

151. Defendant's adverse actions were substantially motivated by Plaintiffs' protected activity.

152. The close temporal proximity between Plaintiffs' objections and the adverse actions establishes retaliatory causation.

153. Defendant's retaliation violated Plaintiffs' First Amendment rights.

154. The retaliatory acts were carried out pursuant to the CITY's customs, practices, and ratification by final policymakers.

## COUNT V

### WRONGFUL TERMINATION / ADVERSE ACTION

### IN VIOLATION OF KENTUCKY PUBLIC POLICY

**Plaintiffs: Katie Batton O'Reilly and Keith Thornberry**

**Against Defendants TERRI COURTNEY and REBECCA MCCLURE**

155. Plaintiffs KATIE and KEITH reallege and incorporate by reference all preceding paragraphs.

156. Kentucky public policy prohibits termination or adverse action based on fabricated disciplinary records, denial of due process, and retaliation for asserting legal rights.

157. Defendant terminated or materially harmed Plaintiffs KATIE and KEITH for opposing unlawful practices and asserting their rights to accurate records and fair treatment.

158. Defendant's actions violated clearly established Kentucky public policy, including policies embodied in the Kentucky Constitution, the Open Records Act, and principles of fair public employment.

159. As a direct and proximate result, Plaintiffs suffered lost wages, lost benefits, emotional distress, reputational harm, and other damages.

## COUNT VI

### NEGLIGENCE

20

**Plaintiffs: Katie Batton O'Reilly and Keith Thornberry**

**Against Defendants TERRI COURTNEY and REBECCA MCCLURE**

160. Defendant City of Walton owed Plaintiffs a duty to exercise reasonable care in the administration of its employment practices, including maintaining accurate personnel records, providing notice of discipline, and ensuring fair and lawful employment actions.

161. Defendant breached its duty of care by, inter alia:

a. Failing to notify Plaintiffs of alleged disciplinary actions;

b. Allowing inaccurate, false, or undisclosed statements to be placed in Plaintiffs' personnel files;

c. Relying on such statements to impose discipline and termination; and

d. Denying Plaintiffs access to their personnel files in a timely manner.

162. Defendant knew or should have known that the use of undisclosed and inaccurate personnel records would foreseeably cause harm to Plaintiffs.

163. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered lost wages, loss of employment opportunities, reputational harm, emotional distress, and other compensable damages.

164. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

## COUNT VII

### NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

**Plaintiffs: Katie Batton O'Reilly and Keith Thornberry**

**Against Defendants TERRI COURTNEY and REBECCA MCCLURE**

165. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

166. Defendant City of Walton had a duty to exercise reasonable care in the hiring, training, supervision, and retention of its supervisors, managers, and policymakers responsible for employee discipline and personnel records.

167. Defendant breached this duty by failing to properly train and supervise its officials regarding:

a. Lawful disciplinary procedures;

b. Due process requirements for employees;

c. Proper maintenance of personnel files; and

d. Prohibitions against falsifying or retroactively altering employment records.

168. Defendant knew or should have known that its officials were engaging in improper disciplinary practices, including placing undisclosed or inaccurate warnings into employee personnel files.

167. Despite this knowledge, Defendant failed to take corrective action and instead retained and empowered these officials to continue engaging in such conduct.

168. Defendant's negligent hiring, training, supervision, and retention was a substantial factor in causing the constitutional and statutory violations and resulting damages suffered by Plaintiffs.

## COUNT VIII

### DEFAMATION (EMPLOYMENT DEFAMATION)

**Plaintiffs: Katie Batton O'Reilly and Keith Thornberry**

**Against Defendants TERRI COURTNEY and REBECCA MCCLURE**

169. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

170. Defendant, through its officials and agents, made and published false statements of fact concerning Plaintiffs' job performance, conduct, and alleged disciplinary history.

171. These false statements were placed into Plaintiffs' official personnel files in the form of handwritten and typewritten warnings and disciplinary entries.

172. Plaintiffs were not informed of these statements at the time they were allegedly made and did not have an opportunity to correct or rebut them.

173. Defendant published and republished these false statements internally and relied upon them to justify adverse employment actions, including discipline and termination.

174. The statements were false, misleading, and defamatory, and Defendant knew or should have known they were false at the time they were created and used.

175. Defendant acted with at least negligence, and in some instances actual malice, in placing and maintaining false statements in Plaintiffs' personnel files.

176. As a direct and proximate result of Defendant's defamation, Plaintiffs suffered damage to their reputations, loss of employment and future employment opportunities, emotional distress, and economic losses.

## JURY DEMAND

**PLAINTIFF hereby demands a jury trial.**

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for relief, as follows:

For general damages in a sum according to proof;

For special damages, including but not limited to, past, present and/or future wage loss,  medical expenses and other special damages to be determined according to proof; For  punitive and exemplary

damages against each defendant in a sum according to proof; Any and all permissible statutory

damages;

For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and U.S.C. § 794(a);

Interest as provided by law;

Costs of suit incurred herein;

For all other relief to which the Court deems just and proper.

**Dated: December 30, 2025**

Respectfully Submitted,

**/s/ Jamir Davis**
Jamir Davis, Esq.
J. Davis Law Firm, PLLC
328 Scott St.
Covington, KY 41011
(859) 750-5033
jdavis@jdaviscounsel.com
www.jdaviscounsel.com

CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2025 the following documents were filed through ECF.

Respectfully Submitted,

/s/ Jamir Davis